# AUSTIN TERM, 1906.

## SAM NEWCOMB v. THE STATE.

### No. 3181. Decided April 11, 1906.

**1.—Murder in Second Degree—Bill of Exceptions.**

On trial for murder a bill of exceptions was taken which related to the action of the court in refusing to admit testimony that the reputation of deceased in the community in which he lived was bad, vicious and quarrelsome in settlements, without showing any reason or purpose on the part of the defendant for offering said testimony, or what object it could serve involving any issue in the case. Held that the bill was not sufficiently full and certain to be considered.

**2.—Same—Grounds of Objection Must Be Stated.**

Where on trial for murder defendant objected to the admission of testimony to the effect that certain witnesses had testified for the State on the examining trial and that no witnesses testified for defendant on said trial, because said testimony was irrelevant and immaterial, the objection is too general, and the allegations of the bill of exceptions should be full and explicit.

**3.—Same—Practice of Appeal.**

Where on trial for murder objection was made to the introduction of testimony showing that the inquest proceedings were reduced to writing and certain witnesses testified, without stating the grounds for objection in the bill of exceptions it could not be considered.

**4.—Same—Oral Evidence—Books of Original Entry—Written Order.**

See opinion on motion for rehearing for objections in bill of exceptions with reference to testimony regarding a certain written order, and account in books of original entry which is held by the court to have been correctly overruled.

**5.—Same—Evidence—Counteracting Cross-Examination.**

On a trial for murder it was not error to admit proof by the State that deceased did business with a certain bank, the court explaining that the bank officers were not actuated in their testimony by their banking connections and because the deceased was not a patron of their bank; to counteract a suggestion by way of cross-examination that defendant was being prosecuted by bankers.

**6.—Same—Evidence—Photograph—Bill of Exceptions.**

On a trial for murder where the bill of exceptions to a ruling of the court to exclude a photograph, did not show that there was evidence in the case which showed that the dresser appearing on the potograph was located at the point where it was at the time the homicide was committed, it could not be considered. The rule is that if the photograph of the scene of the homicide would serve to illustrate any fact, as the locality where some particular act occurred it would be admissible; but when it is neither necessary nor instructive it would tend to create confusion and should be excluded.

**7.—Same—Evidence—Relative Strength and Size of Parties.**

Where on trial for murder the defendant had introduced evidence of a struggle between himself and deceased, prior to his use of a knife on deceased; that the latter was endeavoring to get a pistol, and that he tore defendant's shirt in a struggle to prevent him from doing so, and that deceased was the stronger and a more powerful man than defendant, it was error to exclude testimony in regard to the size and relative strength of the parties.

**8.—Same—Harmless Error—Dispute Between Attorneys.**

Where on a trial for murder a dispute arose between the attorneys with reference to the introduction of testimony as to the character of defendant for truth and veracity, and that the court did not agree with the attorneys for the State on the point at issue, and so stated before the jury, such a dispute although improper was harmless error.

**9.—Same—Practice in District Court.**

On a trial for murder, the action of the court in receiving the report of the grand jury during the progress of the trial, which contained no reference to defendant's case or affected the same was no error.

**10.—Same—Argument of Counsel—Bill of Exceptions.**

On a trial for murder where the defendant did not ask a special charge to ignore argument of State's counsel, and the bill does not show that such argument was obviously of a character to have injured appellant's right, there was no reversible error.

**11.—Same—Responsive Argument.**

On a trial for murder where defendant's attorney had vigorously assaulted the State's witnesses, there was no error on part of the State's counsel to respond to such argument.

**12.—Same—Opinion of Counsel.**

While an attorney is not authorized to parade his belief as to the guilt of the defendant, there was no error when such a statement was qualified by counsel that the jury should not consider it but try the case according to the evidence.

**13.—Same—Evidence in Examing Trial.**

On a trial for murder where defendant's attorney in cross-examination of the State's witness used the examining-trial-evidence, and would read portions thereof, and ask her if she so swore on the former trial and if it was true; State's counsel was authorized to refer to that fact in his argument and to state that she was not contradicted by her former testimony; although said examining trial evidence was not introduced.

**14.—Same—Allusion to Other Case.**

When on trial for murder the State's counsel, while arguing on the question of sympathy suggested by defendant's counsel, cited a certain case in connection with his argument on that subject, and referred to the action of the Governor refusing a pardon on the ground of sympathy; and such reference could not have been appropriated by the jury to solve any doubtful issue, there was no error.

**15.—Same—Legitimate Argument.**

On a trial for murder where it did not appear in the bill of exceptions by a certificate of the trial judge that the argument of the State's counsel was not made in connection with the testimony, there was no error.

**16.—Same—Bill of Exceptions—Discussing Testimony.**

Where on trial for murder it appeared from the bill of exceptions that the counsel for the State was arguing from the testimony. with reference to an account which was in evidence, there was no error when he insisted in his argument that this account was a valid and ligitimate charge against defendant.

**17.—Same—Contradictory Statement.**

Where on trial for murder the State's counsel commented on the testimony of defendant on a former trial and that he was contradicted thereby in his testimony on the trial, and the certificate by the judge to the bill of exceptions did not show that the defendant had not so sworn, there was no error.

**18.—Same—Examining—Trial—Evidence.**

On a trial for murder where the examining-trial-evidence was used by defendant's attorney in cross-examining the State's witness, holding the same in the hand and asking questions from it as to what the witnesses had said on the examing trial, there was no error in the argument of the district attorney in dis-

cussing this matter; especially where the trial judge declared that such argument had no reference to what was sworn to by said witnesses on a former trial.

**19.—Same—Responsive Argument—Certificate of Judge.**

Where on a trial for murder the certificate of the judge to the defendant's bill of exceptions showed that the argument of the State's counsel was responsive to an argument made by defendant's counsel with reference to a chair and suspenders offered in evidence, there was no error.

**20.—Same—Charge of Court—Self-Defense—Reasonable Force.**

Where on trial for murder, according to defendant's own testimony, he and deceased had a struggle prior to the time he stabbed him with his knife; that deceased was the stronger, and ultimately in order to prevent him from getting a pistol out of the dresser-drawer, defendant had to stab him, there was no error on part of the court to submit in his charge the question of necessary and reasonable force before the homicide would be justified.

**21.—Same—Charge of Court—Error Must Be Shown.**

On a trial for murder where no special criticism is made of a charge on murder in the second degree and the same is apparently sufficient, there was no error.

**22.—Same—Charge of Court—Self-Defense.**

Where on trial for murder the evidence showed that the defendant and deceased had a struggle prior to the time he stabbed him with his knife and that defendant in an effort to prevent deceased from getting a pistol stabbed him; and the court in his charge on self-defense distinctly told the jury that it was not necessary that there should be actual danger, provided the defendant acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and that if defendant took the life of deceased in the effort of preventing him from getting a pistol to inflict death or serious bodily injury upon defendant to acquit him, etc., there was no error.

**23.—Same—Appearance of Danger.**

On a trial for murder where the court charged the jury that defendant could act upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and then instructed the jury if deceased was making an attack on defendant, or attempting to procure a pistol at the time, with the intention or apparent intention of inflicting death or serious bodily injury on him, appellant would have a right to slay deceased; and where appellant's testimony showed that deceased was endeavoring to get a pistol, that a struggle ensued in which deceased tore defendant's shirt; there was no point in the objection to the charge that it required the jury to believe that deceased at the time must have been really making an attack on appellant.

**24.—Same—Charge on Manslaughter.**

See opinion for facts authorizing a charge on manslaughter.

**25.—Same—Charge of Court—Imperfect Self-Defense—Harmless Error.**

On a trial for murder where the court's general definition of manslaughter simply enlarged appellant's right of defense, it could not interfere with appellant's right of self-defense, or antagonize any portion of the court's charge on that subject; although the charge may not have been applicable to the facts of the case.

**26.—Same—Record on Appeal—Affidavits—Practice on Appeal.**

Where upon an appeal from a conviction of murder affidavits were filed in the Court of Criminal Appeals, showing that a certain witness had recanted her testimony and that she testified falsely at the trial, the same constitutes no part of the record on appeal and is not subject to review.

Appeal from the District Court of Callahan. Tried below before Hon. J. H. Calhoun.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

*B. D. Shropshire, C. H. Steele,* and *Thomas L. Blanton,* for appellant.
—On question of excluding photograph: Willis v. State, 90 S. W. Rep.,
1100.

*J. E. Yantis,* Assistant Attorney-General; *W. J. Cunningham,* District
Attorney, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the
second degree, and his punishment assessed at twenty-five years confine-
ment in the penitentiary; hence this appeal.

The facts briefly stated show that the homicide occurred at the house
of deceased, at Ft. Griffin, in Shackelford County. It appears that
there was some disagreement between appellant and deceased, in regard
to the settlement of accounts between them. Appellant claimed that de-
ceased owed him some $60. Deceased claimed an offset against said
account. The State's testimony tends to show that the disagreement
occurred particularly in regard to an account of some $18 deceased
claimed appellant owed him on account of an order given by deceased
in favor of appellant to a merchant by the name of Sedgewick, and
that the same was paid by Sedgewick. Appellant disputed this account.
That on Sunday evening, by appointment, appellant came to the house
of deceased to settle said accounts between them; that they went into a
bed room at the house of deceased, in order to make a settlement; that
a dispute or altercation arose between them in regard to said $18 ac-
count. Appellant got up from his chair, seized deceased by the neck,
and stabbed him twice with his knife: once in the heart and once in the
neck, cutting his jugular vein. That at the time deceased was sitting in
his chair, and made no hostile demonstration against appellant. Ap-
pellant's theory, supported by his testimony, is to the effect that he and
deceased endeavored to settle the accounts between them on the day
before the homicide, but they failed to do so. That on Sunday morning,
by appointment he came to deceased's house for the purpose of settling;
that deceased excused himself, stating he was going to church, and
made an appointment for him to come again that evening; that he
came, and on the suggestion of deceased they went from the gallery into
a bed room, deceased getting his accounts out and was endeavoring to
settle them. Appellant conceded all that deceased claimed, including
the $18 account, and some other accounts, in all amounting to about
$30. That deceased owed him $60, and he agreed to take $30, allowing
him all he claimed. That deceased still claimed some other accounts
were unsatisfactory, and finally got up from where he was sitting, and
advanced to a dresser, or bureau, in the room, and attempted to pull the
drawer therefrom, for the purpose, as defendant thought, of getting a

pistol; that a scuffle ensued, and deceased, who was a stronger man than defendant, tore his shirt, and he was afraid he would get the pistol, and he seized a knife, which was open and lying on the dresser—(the same being appellant's knife, which he had previously loaned deceased in order to sharpen his pencil, and was placed by him on the dresser) and in order to prevent deceased from getting his pistol, stabbed him, though he claims he did not know he had inflicted any wound at the time. As soon as deceased turned him loose, he left the room hurriedly. The evidence shows that deceased immediately died from the effects of the wounds above indicated.

Appellant's first assignment and bill of exceptions relates to the action of the court refusing to permit a number of witnesses to testify that the reputation of deceased in the community in which he lived, as being a vicious and quarrelsome man in settlements, was bad. This was objected to by the State on the ground that it was irrelevant and immaterial, and the court excluded said evidence. The bill does not show any reason or purpose on the part of appellant for offering said testimony or what object it would serve in solving any issue in the case. It has been frequently held, where a court has excluded testimony, that the purpose and object of the rejected testimony must be shown. In other words, one asserting an error of the court in rejecting testimony must make his bill of exceptions so full and certain in statement that in and of itself it will disclose all that is necessary to manifest the supposed error. In this case, the bill should have stated that the altercation in which the homicide occurred, arose in regard to the settlement of matters of account between deceased and appellant; and that the purpose and object of the rejected testimony was to show that deceased was improperly disputing said account. Of course, if we look to the statement of facts we would understand that the homicide occurred in relation to the settlement of accounts between the parties. But the rule does not require us to look to the statement of facts. The bill must be so full in itself as to disclose the environments, so as to point out that the court erred in rejecting the offered testimony.

By bill number 2 appellant raises the question as to the correctness of the action of the court in admitting testimony to the effect, that certain witnesses testified for the State on the examining trial of defendant, and that no witness testified for defendant on said trial. Appellant as ground of objection says that said testimony was immaterial and irrelevant, and did not tend to prove any issue in the case, and was calculated to prejudice the rights of appellant. These grounds of objection stated are not a certificate of fact on the part of the court that said grounds were true. It has been held by this court that a bill of exceptions to the admission of evidence, which merely states that the same is "irrelevant and immaterial" is too general. The allegations of a bill of exceptions should be full and explicit, and where the objection is to the admissibility of the testimony, enough of the environments should be stated to show that the action of the court in admitting the

testimony was erroneous. Wright v. State, 36 Texas Crim. Rep., 35; McGlasson v. State, 38 Texas Crim. Rep., 351. And for other authorities, see White's Ann. Code Crim. Proc., sec. 1123, sub. 4. So far as we are advised, this testimony may have been upon some issuable fact in the case, and was properly admitted by the court as bearing on said fact, and thus enabled the jury to solve the question.

We make the same observations with reference to appellant's bill number 4. Certainly it was competent to show the inquest proceedings were reduced to writing, and that Mrs. Mary Baker, wife of deceased, and Lizzie La Blue, both testified in said inquest proceedings. That may have become an issuable fact before the jury under some circumstances. However, the bill does not show what they testified to. So, at most, no harm was done in showing that they testified, and their testimony was reduced to writing.

As presented by appellant's bill of exceptions number 5, no error is shown on the part of the court. The books referred to, and about which the witness testified as to the charge of $18.30, appear to have been books of original entry. The witness Sedgewick further testified that he saw the parties, Mrs. Sam Newcomb and appellant (Sam Newcomb), in his store trading; and further testified that the account of $18.30, which was charged to T. N. Baker for goods bought by appellant, was paid by Baker. This item was relevant testimony, it occurs to us, as the homicide occurred in regard to it, according to the State's theory.

There seems to have been quite a dispute during the trial as to the introduction of testimony regarding the banks. Bill No. 6 shows that an exception was taken by defendant to the proof introduced by the State that deceased Baker did business with the 1st Nat'l. Bank of Albany, and that the Albany Nat'l. Bank, of which witness was president was known and generally called the Farmers' Bank. This testimony was objected to on the ground that it was irrelevant and did not tend to prove any issue in the case and was calculated to prejudice the rights of the defendant before the jury. The court explains the bill by stating that several witnesses for the State on cross-examination by defendant's attorneys were shown to be directors in the Albany National Bank or officers thereof. This fact was made prominent by showing deceased owned more than one ranch and the defendant was a renter or tenant. This testimony seems to have been introduced for the purpose of showing, if possible, that the witnesses who were officers of the Albany National Bank were not actuated by their banking connection; because deceased was not a patron of said bank, whose officers were witnesses. It would appear from several bills of exception that an effort was made on the part of the defendant by this method of cross-examination to suggest to the jury that appellant was being prosecuted by bankers; and that he was a tenant and a poor man; and that this testimony was introduced in order to show that deceased was not a patron of the bank in which some of the witnesses were officers. We do not believe that any of this testimony should have been introduced. We

are not prepared to say, as indicated by the court, that appellant having made this character of issue, it was not competent for the State to meet the same, by showing that the attorneys prosecuting appellant and the witnesses for the State were not actuated by their connection with any bank, inasmuch as deceased was not a patron of their bank.

Bill No. 7 presents the question as to the refusal of the court to permit a certain photograph of the room in which the homicide occurred, to be admitted in evidence. Said bill is as follows: * * * "While witness P. J. Foster was upon the stand testifying in behalf of the defendant, and after said witness had testified that he went to the premises where said homicide occurred and placed the lens of his camera in the kitchen door of said premises in the most advantageous place that the human eye could be to see the most of the room in which the homicide occurred, and that from such position he took a photograph of said room, the dresser in said room then being about three feet from the northeast corner or east wall of said room, which said photograph did not show the dresser, because same could not be seen from said door, and which photograph is the same introduced in evidence; and then defendant offered to prove by said witness that he then moved said dresser about a foot and a half or two feet towards said northeast corner, or east wall of said room, and then took another picture of said room with his camera at the said point of observation in the kitchen door, as aforesaid, and that the second photograph taken then showed the little side drawers of said dresser, which photograph was offered in evidence by defendant. Whereupon the State objected to the introduction of said photograph, as well as to the testimony offered in connection therewith, for the alleged reason that a photograph of the situation with the dresser about where it was supposed to be at the time of the homicide had already been introduced, and it was not proper or relevant to move the dresser to a place where it was not supposed to be at the time of the homicide, or make a photograph of the conditions not supposed to exist at the time of the killing, and the court excluded such testimony, and said photograph, and would not allow same to go in evidence before the jury. To which defendant at the time excepted, for the alleged reason that said testimony was relevant, competent and material to the issues in this case. The defendant's attorney further claiming that the uncontroverted evidence was that at the time the deceased was killed the said dresser was at least five and a half or six feet from the said northeast corner or east wall of said room, and that Mrs. Mary Baker and Lizzie LaBlue both testified that deceased at the time he was killed was seated in front of and near to the little drawers of said dresser, and that they saw the part of said difficulty, which they claim to have seen, from the said kitchen door, and that the exclusion of said testimony greatly prejudiced the rights of defendant," etc. Which the court "approved and ordered filed with said excluded photograph, which is a part hereof." We do not understand that this bill of exceptions shows that there was evidence in the case which showed that the dresser

was located at the point where it was shown in the photograph at the time the homicide was committed. The admissibility of this character of testimony was discussed and authorities cited in Willis v. State, 90 S. W. Rep., 1100. The rule there laid down was if the photograph of the scene of the homicide would serve to illustrate any fact, as the locality where some particular act occurred, it would be admissible. But a photograph is inadmissible when it neither is necessary nor instructive, and when it would tend to create confusion. Of course, to be illustrative of any fact, the photograph must be taken of the locality under conditions similar to that when the transaction occurred. We do not understand this bill to show, as stated before, that the evidence showed the dresser stood where it did when the homicide occurred. These conditions should have been stated as a matter of fact in the bill of exceptions: otherwise the photograph would tend merely to confuse the jury. Indeed the photograph sent here (and the one excluded is among the number) it occurs to us would have served no useful purpose with the jury. On the contrary they would serve to confuse. We understand that full opportunity was afforded both the State and the defendant to examine the witnesses as to the conditions in the room where the homicide occurred, and particularly as to whether or not the parties could be seen from the spot where the State's witnesses claim to have seen the parties at the time the homicide occurred. Besides it seems that a photograph taken under conditions which appellant claimed to be similar to those existing at the time of the homicide, was admitted in evidence. So we see no error in the action of the court in excluding the photograph complained of in the bill.

We believe the testimony in regard to the size and relative strength of the parties was admissible. Evidence of a struggle was introduced by appellant prior to his use of the knife on the deceased. He claimed deceased was endeavoring to get a pistol out of the drawer and that he seized him to prevent him; a struggle ensued and deceased tore his shirt, and deceased was a stronger and more powerful man than defendant. So it seems that appellant made the issue as to the relative strength and size of the parties.

During the trial a dispute appears to have arisen between the attorneys with reference to the introduction of testimony as to the character of defendant for truth and veracity. Some of the attorneys for the State contending that they could not attack defendant's character on that issue. Defendant's attorney insisted that defendant having testified, the State could introduce testimony as to his character and had failed to do so. Of course, a dispute of this character should not have been permitted by the court; but the explanation given by the court to the effect that the court did not agree with the attorneys for the State on the proposition, and his statement to that effect, before the jury, cured any possible error.

Nor was there any error in the action of the court receiving the report of the grand jury during the progress of the trial. Of course,

the court could not, prior to reading it, know what the report contained. However, it contained no reference to the case then on trial. The statement in said report that crimes of the graver sort, etc., seemed to be on the decrease in the county, we do not think could have injured appellant nor affect any real defense whch he had.

Bills of exception Nos. 12 to 20 inclusive, relate to the argument of Sam Webb, Esq., one of the private prosecutors employed in the case; and bills Nos. 21 to 26 inclusive, relate to the closing argument of W. J. Cunningham, Esq., district attorney. While bills of exception were reserved to certain portions of the arguments of these attorneys, no written charge was asked on any proposition involved in said argument. The rule in such case is, that unless the argument is obviously of a character to have injured appellant's rights, the case will not be reversed in the absence of a written charge requested, and refused by the court, and a bill of exceptions taken thereto. It seems that in the course of the argument, Mr. Webb alluded to the fact that one of the witnesses had married the daughter of Mr. Driskill, whom he remarked the jury well knew._ We fail to see how, as presented here, this matter could have injured appellant. The mere passing remark, that the jury were acquainted with Mr. Driskill, would not be of that character to give any particular weight to the testimony of the witness. Nor is it shown in the bill that the testimony of said witness was in any wise material in the case.

Nor does it occur to us that the remarks of Mr. Webb, regarding the banks, and the connection of counsel and witnesses with certain banks, was calculated to injure appellant's rights: especially in view of the fact, as explained by the court, that this character of argument was brought about on account of appellant's counsel in their conduct of the case. The court states that said attorneys had vigorously assaulted the witnesses who were officers of the Albany National Bank, for co-operating with Sam Webb, president of said bank, in an attempt to crush a tenant, etc.

Nor did the remarks of said private prosecutor with regard to Mr. King, as it occurs to us, in any wise injuriously affect appellant. Of course, an attorney is not authorized to parade his belief as to the guilt of a defendant, and to ask a conviction on that ground. But here, as we understand the bills of exception, while counsel did state his belief, he distinctly told the jury, that should have no consideration with them; but called on them to try the case according to the evidence.

As appears from the bill, and in connection with the explanation by the court, in examining the witness, Lizzie LaBlue, the attorney for defendant used the examining-trial-evidence in her cross-examination, and would read portions thereof and ask her if she so swore on the former trial, and if it was true. Now, while this examining-trial-evidence was not introduced as testimony in the case, yet the method pursued by appellant's counsel in the cross-examination of said witness, authorized State's counsel to refer to that fact, and to state that it did not appear

she was contradicted by her former testimony, but corroborated thereby.

The reference by State's counsel to the "Prellar case" appears somewhat foreign to the case in hand, but we fail to see how that could have proven injurious to appellant, who was arguing as to a question of sympathy that he declared was insisted on by appellant's counsel, and he cited the "Prellar case" in connection with his argument on that subject, and referred to the action of the governor refusing a pardon on the ground of sympathy. It was not a case illustrative of any point in this case, and the reference could not have been appropriated by the jury for the purpose of enabling them to solve any doubtful issue, as was the case in W. W. Jenkins v. State, decided at Dallas Term, 1906, where evidently the instance was used by counsel to illustrate and enforce a fact in the case then on trial with the jury.

Nor was there any error in the argument of counsel for the State in declaring that the defense was concocted. It does not appear that the argument was not made in connection with the testimony. The fact that appellant stated, as one of his grounds, that there was no evidence to authorize the argument, is not a certificate of the judge that there was no testimony to that effect. We believe that an attorney has a right to argue from the testimony in the case, and to appeal to the intelligence of the jury to apply the law to that evidence, and that it authorized a conviction, and to appeal to the jury to convict defendant. And to tell the jury, in that connection, that he had no interest in the matter, except to see the law upheld, and to see society protected, and to ask them not to turn a bloody and cruel murderer free.

The district attorney was not outside the testimony in discussing the $18.30 account, which had been introduced in evidence, and to insist that it was a valid and legitimate charge against appellant from the testimony. It does not appear that the district attorney was outside of the evidence. On the contracy from the bill itself, it appears that he was arguing from the testimony.

Nor does it appear that the district attorney was outside the record in discussing before the jury the testimony of appellant; and insisting upon what appellant swore upon a certain point at a former trial at Albany. He states in that connection that appellant appeared to have varied his testimony at the present trial, but he made him admit that he swore contrariwise at Albany, etc. The allegation by appellant, as one of the grounds of his objection to said testimony, that it was outside the record, and appellant had not so sworn, is not a certificate by the judge that such fact existed, but is merely a statement of a ground of objection to the argument.

Nor does it appear that a reference by the district attorney to the testimony of Mrs. Baker and Lizzie LaBlue was improper. The bill does not show that he was outside the record. As explained by the judge, the district attorney's argument had no reference to what was sworn on a former trial, but merely to what was sworn on this trial. The mere fact that State's counsel stated that the witnesses, Mr. Baker and

Lizzie LaBlue, went on record at the inquest, we do not understand to mean that they went on record as to the facts of the case corroborating entirely their statements as witnesses on this trial; but, as is stated by he court, when the attorney referred to their testimony, he referred to the testimony of said witness adduced on this trial. If the exhibits in connection with bills 2 and 25 are to be considered in connection therewith, there is evidently no conflict between the testimony of said witnesses so exhibited, and their testimony on this trial. The testimony of said witnesses coincides with and corroborates their testimony given on the trial so far as it went. Besides, as explained by the court, it appears that Lizzie LaBlue testified at the inquest trial on the evening of the killing, and also at the examining trial, three days thereafter; and that her testimony was reduced to writing, and that the examining-trial-evidence was used by defendant's attorneys in cross-examining said Lizzie LaBlue, and that he held the same in his hand and asked her questions from it as to what she said on the examining trial. This matter was proper to be discussed by the district attorney.

The action of the district attorney in alluding to the chair and suspenders offered in evidence, does not appear to have been outside the record. Nor the statement by him in that connection that he did not think of the chair until it was brought forward and offered by defendant. Nor were the suspenders in his mind, because, as stated by him, he could not get any satisfaction from the chair or the suspenders. In that connection he stated to the jury that it was with them to consider whether or not said articles so introduced threw any light upon the case. Besides, the explanation of the court shows that the argument was responsive to an argument made by defendant's counsel.

Appellant objected to the following charge of the court: "Every person is permitted by law to defend himself against any unlawful attack reasonably threatening injury to his person, and is justified in using all the necessary and reasonable force to defend himself, but no more force than the circumstances reasonably indicate to be necessary. Homicide is justified by law when committed in defense of one's person against any unlawful and violent attack made in such manner as to produce a reasonable expectation or fear of death or some serious bodily injury." As an abstract proposition we do not understand this charge to be questioned by appellant. The only criticism made is that it is not applicable to this case. According to appellant's own testimony he and deceased had a struggle prior to the time he stabbed him with his knife. In that struggle, according to his testimony, deceased was the stronger, and ultimately, in order to prevent him from getting a pistol out of the dresser-drawer, he had to stab him. The question of necessary and reasonable force, we think, was thus involved in the case. Evidently, if he could have prevented him from getting the pistol, by means short of stabbing deceased, he should have done so.

Appellant also excepted to the court's charge on murder in the

second degree. No special criticism is made of this charge, and we fail to discover any error therein. It occurs to us that it was a proper charge.

The charge on self-defense, it is urged deprived appellant of the right to defend on apparent danger. We do not believe it is subject to this vice. The court in this charge distinctly tells the jury that it is not necessary that there should be actual danger, provided he act upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time. And furthermore tells the jury, if they believed that deceased was at the time making an attack on him, or was making an effort to procure a pistol, or was in the act of procuring a pistol, with the intention or apparent intention of inflicting death or serious bodily injury upon the defendant, as it then reasonably appeared to defendant, that he was thereby put in fear, etc., he had a right to take the life of deceased, and the jury should acquit him. It occurs to us that this charge adequately preserved to appellant his right to defend upon apparent danger.

Further criticism is made that the charge required the jury to believe that deceased at the time must have been really making an attack on appellant, or was really making an effort to procure a pistol; and that appellant could not defend, if deceased was only apparently from his standpoint making such attack or attempt to get such pistol. The court in the charge complained of had previously told the jury that defendant could act on a reasonable apprehension of danger as it appeared to him from his standpoint at the time. With this preface, the court then instructed the jury, if deceased was making an attack or attempting to procure a pistol at the time, with the intention or apparent intention of inflicting death or serious bodily injury, appellant would have the right to slay him. Appellant's testimony on this point, was that deceased was endeavoring to get a pistol, and that they had a struggle in which deceased tore his shirt. This was a real attack from his standpoint, and a real effort on the part of the deceased. However, the court did not use the words "real attack or real effort." We think under the charge the same was throughout qualified by the appearances of danger as it presented itself to appellant.

We believe that the court was authorized, under the circumstances of this case, to give a charge on manslaughter.

Appellant also objected to the court's charge, as follows: "A serious personal conflict, in which great injury is inflicted by the person killed, by means of weapons or other instruments of violence, or by means of great superiority of personal strength, although the person guilty of the homicide were the aggressor, provided such aggression was not made with the intention to bring on a conflict for the purpose of killing the deceased." This charge was excepted to on the ground that there was no evidence authorizing it; and that the same raised the question of imperfect self-defense, which was not raised by the evidence. This charge was given in the general definition of manslaughter. Of course, in passing

Vol. 49 Crim.—36.

on the question of manslaughter it simply enlarged appellant's right of defense on this ground. We fail to see how such a charge interfered with appellant's right of self-defense. It certainly did not antagonize any portion of the court's charge on that subject; and although the charge may not have been applicable to the facts of this case, we fail to see how it could have injuriously affected appellant.

There being no error in the record, the judgment is affirmed.

*Affirmed.*

## ON REHEARING.

### June 6, 1906.

HENDERSON, Judge.—This case was affirmed at a former day of this term, and now comes before us on motion for rehearing. Appellant strenuously insists that the court was in error in the original opinion in regard to his bill of exceptions number 5. We agree with counsel that we were in error in laying stress upon the fact that the books of original entry were introduced. It seems that they were not introduced, though the witness testified as to the contents of said books of original entry. There was no objection urged to this feature of the case. The bill shows that the $20 order was presented to the witness Sedgewick, from deceased, T. N. Baker, authorizing him to sell appellant from his store $20 worth of goods, and charge the same to T. N. Baker. The objection urged in the bill was to parol testimony regarding this written order, and not as to the books or their contents, showing a sale of $18.30 by the witness to appellant and charging the same to deceased. Strictly speaking, secondary evidence on the contents of the written order was not admissible. However, appellant admitted this item of $18.30, and stated that this matter of controversy was eliminated from the discussion, and that he agreed to the same, and that deceased then owed him after this and other items were conceded, the sum of $30, and the dispute arose because he would not pay this. (See Trans., pages 120 and 122.)

As to the refusal of the court to admit the photograph which is complained of in the motion for rehearing we see no reason to change our former views as expressed in the original opinion.

As to the affidavits filed showing that Lizzie LaBlue has recanted her testimony, stating that she testified falsely at the trial, that is a matter with which we have no concern. It constitutes no part of this record, and under the rules of this court is not subject to review.

The motion for rehearing is accordingly overruled.

*Overruled.*

Brooks, Judge, absent.