RAY FOWLER, *alias* R. C. FLOWERS, *etc.*, v. THE STATE.

No. 19971.   Delivered November 30, 1938.

The opinion states the case.

*W. H. Fryer* and *J. L. Dunigan,* both of El Paso, for appellant.

*Roy D. Jackson,* District Attorney, and *Harold S. Long,* Assistant District Attorney, both of El Paso, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The offense is theft from the person; the punishment assessed is confinement in the State Penitentiary for a term of seven years.

The record before us shows that on the 22d of January, 1938, George Tucker arrived in El Paso from Terre Haute, Indiana, on his way to New Mexico. He decided to remain a few days in the city before going to the place of his destination. While there, he went across the river to Juarez, Mexico, where he met the appellant. The two went sightseeing about the city, purchasing some trinkets and took a few social drinks together at a saloon. They returned to El Paso and agreed to meet again the next morning in the lobby of the Hotel Knox from which point they were to again visit Juarez. The next morning Tucker, in compliance with their agreement of the previous evening, went through the lobby of the hotel into the bus station looking for appellant who was in the station. They left together to catch a street car with the purpose of going to Juarez. Just as they were about to get into the car, Tucker opened his pocketbook which contained $200 in order to get money to pay the fare. Appellant grabbed it, jumped on the running board of a passing automobile and fled. Tucker pursued the car and in his pursuit saw a police car. He stopped it and reported the matter to the policemen therein, but they were unable to apprehend appellant at that time. Tucker remained in the city for some time and assisted the police in their search for the appellant. One day as he and a policeman were driving along the street, he saw appellant and pointed him out to the policeman, who immediately arrested him. Appellant did not testify or offer any affirmative defense.

By bill of exception number one, appellant complains of the action of the trial court in overruling his application for a continuance based on the absence of one R. D. Horn, by whom he expected to prove that he, the appellant, won the money from Tucker in a matching game. Owing to the disposition we are making of the case, we do not deem it necessary to enter an extended discussion of the question other than to say that we do not think appellant exercised that degree of diligence required by law to entitle him to a continuance. See Branch's Annotated Penal Code, Sections 314 and 15, and the many authorities there cited.

Bills of exceptions numbers two and seven reflect the following occurrence. While the witness Price was upon the stand, the district attorney propounded to him the following questions and received the following answers: "Q. I will ask you whether or not you had known this defendant in El Paso before you arrested him on this charge? A. In 1931. Q. Did you have dealings with him on one or more occasions? A. He was arrested twice."

Bills of exceptions numbers three and six reflect the following occurrence. While the witness Reed was upon the stand, testifying in behalf of the State, the district attorney propounded to him the following questions and elicited the following answers: "Q. I will ask you if in El Paso in 1931 you had known the defendant under some other name than Reed? A. Anderson. Q. Did you know him under some other name than Anderson? A. Yes, sir; they had him in the city jail."

The court promptly sustained appellant's objections in each instance and instructed the jury not to consider the same. However, this probably did not entirely eliminate the unpleasant odor.

By bill number ten, appellant complains of the following remark made by the district attorney in his closing argument: "It shows to my mind conclusively that we are dealing with a professional crook?"

Appellant objected thereto on the ground that there was no evidence on which to base the remark.

We have carefully reviewed the record to find some evidence other than that objected to and excluded by the court which would authorize the remarks complained of, but have failed to find any unless we would be justified in saying that the argument was not improper since appellant lied about being a dairy man in Mississippi and was stopping at the Knox Hotel with his wife and sister. This lie, we do not believe, would justify us in so holding.

A person may be a liar and yet not a crook—much less a professional crook. The argument complained of conveyed to the minds of the jury the idea that the district attorney knew that appellant habitually engaged in unlawful enterprises of a similar nature as that with which he was charged. If this argument was the only prejudicial matter brought to the attention of the jury, it might not of itself be of sufficient gravity to require a reversal. But when considered in connection with the improper testimony of previous arrests of appellant, which the court properly tried to withdraw from the consideration

of the jury and which carried the implication that he was a habitual criminal, we are of the opinion that the matter presents reversible error. To what extent the combined effect of the argument and the improper testimony may have had in influencing the jury to assess the maximum penalty, we are not prepared to say. It may be true that under the facts, the punishment is deserved, but the issue should be decided without the injection of prejudicial and harmful matters, not legally admissible. See Newcomb v. State, 95 S. W. 1048; Witherspoon v. State, 14 S. W. (2d) 1038; McIntosh v. State, 213 S. W. 659.

We see no need in discussing the other matters complained of by appellant, since they will probably not arise again on another trial.

For the error discussed, the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.